RAYMOND ALEXANDER POTEET V. STATE.

No. 24981. November 15, 1950.

*James H. Martin, Irwin & Irwin,* and *Robert C. Benevides,* all of Dallas, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The conviction is for murder with malice, with punishment assessed at five years' confinement in the penitentiary.

Appellant was the owner and operator of a beer tavern. The deceased, Lee Bowen, on a prior occasion had visited appellant's place of business and engaged in a fist fight with appellant.

On the day of the homicide the deceased and one Delbert O. Crain came to the beer tavern. Upon leaving the building, the deceased engaged in a fight with one Glenn Tatlock, one of the persons who was present at the previous difficulty.

Appellant came out of the tavern and shot the deceased with a pistol. The bullet entered deceased's body on the left side some three inches to the left of the left nipple, and lodged in the spinal column, causing death.

O. M. Baggett, Jr., a witness for the state, who witnessed the fight and the shooting while he was seated in his car in front of the tavern, testified in part as follows:

"At the time that I discovered this defendant out there in the yard, Lee Bowen was down on this other fellow fighting him. As to what position this other fellow was in on the ground, the fellow that Lee Bowen was fighting, he was lying on the ground with his back, with his head up next to the building, and Lee Bowen was down on top of him. All I could see was that he was down fighting him. I first saw the defendant when he was coming out the door. He came out the door and maybe stopped just a moment, momentarily, and he went up and grabbed Bowen on the shoulder. I don't know if he touched him or if he grabbed him, but I know that he put his hands on Bowen's shoulder. He used his left hand. When Bowen raised up and turned around, he noticed he had a gun. 'He' was Bowen. As to whether or not I saw that gun any other time after I observed that he had the gun in his hand, I will say that I observed him when he was bringing it up like that. I observed the defendant shoot Bowen with that gun. After that gun was fired, Bowen fell on the ground. The defendant turned around and said something and went back in the place. I did not see this defendant out in front of the place any more after that. Lee Bowen never did get up off of the ground, as far as I could observe, after that. * * * At the time that I saw this defendant raise his gun, or shoot him, Lee Bowen was turned around towards Poteet, the defendant. As to whether or not Lee Bowen at that time had anything in his hands, I couldn't see. I don't know. At the time the gun was fired, the deceased was in a partially crouched position, I believe."

Appellant's version of the prior difficulty was that he was endeavoring to conduct his business in accordance with law, and was attempting to preserve order; that deceased's conduct, and that of his companions, was loud and boisterous; that he

remonstrated with deceased and a fight ensued when the deceased invited appellant to try to put him out of the tavern.

Referring to the occasion of the homicide, appellant testified that the deceased had insisted on buying beer after the closing hour of 1 A.M., and he had refused to make the sale and had requested the deceased to leave. That shortly thereafter he heard a commotion outside, and saw through a window that a fight was going on, and saw Glenn Tatlock fall;—that he had a pistol in his pocket, as was his usual custom at closing time;—that he called for his special officer and went outside to stop the disturbance.

As to the happenings outside, he testified:

"When I walked out of the door, that is a concrete walk in front of my place, and right to the left of the steps Glenn Tatlock was on the bottom on his back across the step, and his head, and neck to the wall, and Lee Bowen was on top of him and shaking him up and down, and hammering him with his fists. At that time, Crain was standing right over him. I walked up and touched Lee on the shoulder and said, 'Break it up. We don't want any fighting here.' He jumped up off of him and started swinging at me. I backed up as quick as I possibly could. I was backing away from Bowen. I was trying to get him to stop. I was telling him to stop and he was swinging at me. I had backed up, and he had swung at me twice when I fired the gun. He had swung at me twice, and I had backed up and I pulled the gun out of my pocket, and fired. I did not intend to kill him. I did not shoot at a vital place on that man. I fired the gun one time. There was nothing to have prevented me from firing it more than once. When I fired the gun, he stopped. The other man, Crain, kept coming right on. I told him to stop and backed up some more. He stopped. I didn't fire at him. * * *

"When I went outside, I did not have my pistol in my hand. I am positive, and I tell this jury that it was in my right pants pocket. I said that I put my hand on Bowen's shoulder and said, 'Break it up, and let's don't fight here,' or some words to that effect. Bowen was swinging at me with his hands. He was swinging with his right hand and partly grabbing at me with his other.

"As to whether I saw anything in Bowen's hand, I couldn't tell for sure, but it looked like he did have something. I thought it possibly could have been a broken beer bottle, a piece of a

broken beer bottle. I am positive that I saw something in his hand. It was in his right hand. I am not sure that it was. I found some broken beer bottles around there after that, the next day. It looked like the neck of a broken beer bottle in the man's hand.

"When I was backing away from the man and telling him to stop and then pulled the trigger and fired the gun, I did that because I was afraid of the man. I had heard threats. I was afraid of him. That was why I shot him. At the time I shot, I felt that my own life was in danger. On this particular night, with reference to my physical condition, I was sick. I had a terrible cold and practically had pneumonia.

"At the very time I shot this man, I believed they would have killed me or bunged me up bad, if I hadn't shot him."

In his charge to the jury, the trial court properly submitted the law of self-defense against an attack giving rise to apprehension of death or serious bodily injury.

Appellant objected to the charge because it failed to submit also the law of self-defense against a milder attack as contained in Art. 1224, P.C.

We are convinced that the testimony raised the defense issue of appellant's right to defend himself against the claimed violent attack of the deceased, though not of a nature giving rise to apprehension of death or serious bodily injury, such defense being conditioned upon appellant first having resorted to all other means save retreat. See Schmidt v. State, 134 Tex. Cr. R. 475, 116 S.W. 2d 388; Ashworth v. State, 148 Tex. Cr. R. 561, 189 S.W. 2d 875.

Under the evidence the jury may have found that the deceased made an attack upon appellant which was unlawful and violent, and yet failed to believe that it was of a nature to cause appellant to believe that he was in danger of death or serious bodily injury. If so, appellant's rights under such circumstances to defend against the unlawful attack as provided in Art. 1224, P.C., was not explained to the jury.

The omission was properly called to the trial court's attention by objection to the charge and exception reserved, and was again presented in the motion for new trial.

For the error in the charge, the judgment is reversed and the cause remanded.

Opinion approved by the court.